REW R. GOODENOW (3722)
PARSONS BEHLE & LATIMER
50 West Liberty Street, Suite 750
Reno, Nevada 89501
Telephone:    (775) 323-1601
Facsimile:    (775) 348-7250
Email: RGoodenow@parsonsbehle.com

J. THOMAS BECKETT (UT 5587)
*Admitted Pro Hac Vice, Dkt.#17*
SCOTT S. BELL (9507)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:    (801) 532-1234
Facsimile:    (801) 536-6111
Email: ECF@parsonsbehle.com

*Attorneys for Nevada Star Resource Corp.*

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| IN RE WESTERN UTAH COPPER COMPANY,<br><br>Debtor, | Case No. 10-51913-gwz<br><br>Judge Gregg W. Zive<br><br>Chapter 11 |

**MOTION FOR ENTRY OF ORDER TRANSFERRING
VENUE TO THE DISTRICT OF UTAH**

Pursuant to 28 U.S.C. § 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Nevada Star Resource Corp. ("NSRC"), by and through its undersigned counsel, hereby respectfully moves this Court for entry of an order transferring venue of the above-captioned bankruptcy case to the District of Utah.

Western Utah Copper Company (the "Debtor" or "WUCC") could have and should have filed this case in the District of Utah. As described in more detail below, the Debtor is a Utah company doing business in Utah. Its ties to Nevada are few. Its assets (chiefly copper mines and a mill) are all in Utah. Its principal place of business is in Utah. Virtually all its creditors are in Utah. Its employees are in Utah. Its prepetition decision-makers are in Utah. Whether or not it even owns all the land that it seeks to mine (and all the land upon which its mill is built) is the subject of a lawsuit that is pending in Utah. The applicable law in that proceeding – which

presents core issues in this bankruptcy case – is Utah law. And most of the material witnesses in that lawsuit are in Utah; none of them is in Nevada.

Given the Debtor's strong connections to Utah and its weak connections to Nevada, the interests of justice and the convenience of the parties will all be better served if this bankruptcy case is transferred to Utah.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF ORDER TRANSFERRING VENUE TO THE DISTRICT OF UTAH

In support of its motion, NSRC, by and through its undersigned counsel, states as follows:

### INTRODUCTION

Under 28 U.S.C. § 1408, the Debtor could have filed its bankruptcy petition in either the District of Utah or the District of Nevada. It chose to file in Nevada notwithstanding that the factors courts use to determine appropriate venue under 28 U.S.C. § 1412 and Bankruptcy Rule 1014 all clearly point toward Utah.

NSRC's interest in WUCC's bankruptcy derives from a lawsuit between those two parties. That lawsuit (the "Utah Lawsuit") is pending in the District of Utah, Case No. 2:09-CV-00542, before Judge Dale A. Kimball. The central issue in the Utah Lawsuit is the ownership of some of the most valuable mining claims and other real properties that the Debtor contends comprise assets of its estate.

In short, NSRC asserts in the Utah Lawsuit that it conveyed those properties to WUCC in 2002, retaining a royalty interest and an option to reacquire the properties if they were not timely put "into production." In 2008, WUCC declared that the properties were "in production." Skeptical, NSRC requested documentation (to which it was entitled) to verify that declaration, but WUCC failed to provide it. Consequently, in July, 2009, NSRC filed the Utah Lawsuit seeking,

PARSONS
BEHLE &
LATIMER

among other things, a declaration of whether WUCC or NSRC owns the properties. On the basis of what it learned in the Utah Lawsuit, NSRC subsequently exercised its option to reacquire the properties it had previously conveyed to WUCC.

In addition, NSRC has learned that, in January, 2010, the Utah Division of Oil, Gas, and Mining issued a "Citation for Non-Compliance and/or a Notice of Violation" to WUCC. Subsequently, in April, 2010, NSRC filed a motion for a preliminary injunction seeking, among other things, an order requiring WUCC either to suspend its mining and milling operations or to escrow its operating revenues as security for environmental remediation and/or as security for NSRC's production royalties. NSRC's preliminary injunction motion in the Utah Lawsuit was fully briefed and awaiting a hearing when the Debtor filed its petition in Nevada.

Certainly, the parties' disputes in the Utah Lawsuit are core issues in the Debtor's bankruptcy: the Debtor can hardly reorganize around mining properties if NSRC is in fact the rightful owner of that land, and it can hardly propose a feasible plan until its environmental issues in Utah are resolved. Moreover, it is NSRC's position that its interest in the properties it is entitled to reacquire are senior to, and free and clear of, the asserted interests of the Debtor's secured lenders. All these issues will be front and center in this bankruptcy case, and they will all be decided under Utah law and upon the testimony of mostly Utah witnesses. These issues should be decided in Utah. So should this bankruptcy case.

### STATEMENT OF FACTS

1. The Debtor was incorporated in the State of Utah. Its primary, if not only, business consists of mining activities, including exploration, development, extraction and processing of mineral reserves in and around the "Milford mineral belt" in Beaver County, Utah. (*See* Declaration of J. Thomas Beckett in Support of NSRC's Motion for Entry of Order Transferring Venue to the District of Utah (the "Beckett Decl.") at ¶¶ 3-6.

2. WUCC's primary, if not only, assets consist of mining claims and other real and personal properties located in Beaver County, Utah. (*See id.* at ¶¶ 3 - 7.)

3. WUCC claims that "[i]t is currently the third largest employer in the Milford, Utah area, employing approximately 60 people as of April 1, 2010." (*See id.* at ¶ 17.)

4. David McMullin, the Debtor's Chairman of the Board and Vice President, resides or is employed in Utah. Mark Dotson, the former President and CEO of WUCC, resides or is employed in Utah. Board members Marcus Southworth and Eric Barlow also reside in or are employed in Utah. (*See id.* at ¶¶ 10 & 11.)

5. The Debtor's pre-petition tax and accounting professionals are located in Utah. *See* Nevada Bankruptcy Court docket for case number 10-51913-gwz, entry number 1. On that basis, NSRC believes that the Debtor's financial records are in the State of Utah.

6. The creditors holding 16 of the Debtors' 20 largest unsecured claims (80 percent) are located in Utah. None of them is located in Nevada. Almost ninety percent ($2,548,576.62 of the total $2,892,992.94) of WUCC's unsecured debt is held by Utah creditors. (*See* Beckett Decl. at ¶¶ 19 – 22.)

7. The Debtor has taken six loans that are purportedly secured by the Debtor's assets. Some $27 million of principal is owing on these loans, and interest in the same amount may also currently be due. These six loans were made by groups comprising eight business entities and ten individuals. Six of those eight secured creditor entities are either Utah corporations or Utah limited liability companies. Six of them have registered agents located in Utah. Of the ten individuals who appear to be secured lenders to WUCC, nine were residents of Utah at the time the loans were made. (*See id.* at ¶¶ 23 & 24.)

8. In 2002, NSRC and WUCC entered into a written contract entitled "Agreement and NS Option," bearing the effective date of July 23, 2002 (the "Agreement"). Pursuant to the

PARSONS
BEHLE &
LATIMER

- 4 -

Agreement, NSRC transferred and conveyed to the Debtor a substantial portion of the mining claims and other real and personal properties (the "Properties") that NSRC owned or controlled in Utah. Paragraph 16.B of the Agreement contains a choice of law provision, which states that "[t]his Agreement and all other documents to be executed in connection herewith shall be governed by and interpreted in accordance with the laws of the State of Utah." (*See id.* at ¶ 8.)

9. On June 15, 2009, NSRC filed the Utah Lawsuit, seeking, among other things, a determination of whether WUCC failed to achieve "production" by November 1, 2008, and whether NSRC is therefore entitled to exercise its option to reacquire the Properties. (*See id.* at ¶ 9.) NSRC filed its Amended Complaint on November 13, 2009, adding a claim for royalties owed to NSRC under the Agreement. (*See id.* at ¶ 13.)

10. On or about January 21, 2010, the Utah Division of Oil, Gas, and Mining ("DOGM") issued a Citation for Non-Compliance and/or a Notice of Violation to WUCC. The citation was for conducting mining activities outside the permitted area and engaging in and/or creating a "condition, practice, or violation [that] is causing or can reasonably be expected to cause significant, immediate environmental harm to land, air, or water resources." Specifically, DOGM asserts that WUCC has deposited mine tailings contaminating the ground in unpermitted areas. (*See id.* at ¶ 14.)

11. In light of WUCC's ongoing mining activities on the Properties, coupled with the permitting and environmental violations described above, and WUCC's apparent insolvency, NSRC filed a motion for a preliminary injunction in the Utah Lawsuit on April 2, 2010. In that motion, NSCR sought (1) an order prohibiting WUCC from conducting mining operations on any of the Properties pending the outcome of the suit, or alternatively, (2) an order requiring WUCC to deposit the operating revenues derived from the Properties into an escrow account as security for damage caused to the Properties during the pendency of the suit and/or for security for

production royalties that were or would be owed to NSRC. (*See id.* at ¶ 15.) NSRC's preliminary injunction motion was fully briefed, and NSRC was seeking a hearing date on the motion when the Debtor filed its petition. (*See id.* at ¶ 18.)

## ARGUMENT

I. **ALTHOUGH VENUE IN NEVADA IS TECHNICALLY PROPER UNDER 28 U.S.C. § 1408(2), THIS CASE SHOULD BE TRANSFERRED TO UTAH UNDER 28 U.S.C. § 1412 AND BANKRUPTCY RULE 1014(A).**

A. **Although Venue in Nevada is Technically Proper, the Basis for that Venue is Thin.**

Section 1408 of title 28 of the United States Code governs venue in bankruptcy cases. It provides that venue is proper in the district –

> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement . . . ; or
>
> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

WUCC could not have filed its bankruptcy petition in the District of Nevada under 28 U.S.C. § 1408(1). It is a (barely) operating Utah corporation with its principal place of business and its principal assets in Utah; it has neither a domicile nor a residence in Nevada. (*See* Statement of Facts ("SOF"), *supra*, ¶¶ 1 & 2.) Under section 1408(2), however, WUCC *did* qualify to file its petition in Nevada, but only because its parent, Copper King Mining Corporation – a holding company organized under Nevada law, whose sole substantial asset is WUCC – had filed bankruptcy in the District of Nevada moments earlier. (*In re Copper King Mining Corporation,* case no. 10-bk-51912, United States Bankruptcy Court, District of Nevada, filed May 18, 2010.) Technically, Nevada is a proper venue for this case, but the basis for that venue is as thin as it could possibly be.

### B. This Case Should be Transferred to the District of Utah Under 28 U.S.C. § 1412(1) and Bankruptcy Rule 1014(a).

That venue may be "proper" in the District of Nevada is not dispositive of the question of where justice dictates the case should be heard. "While venue may be technically proper, retention of the case would not be in the best interest of justice. Transfer of the case will afford all parties in interest more efficient, economic and meaningful justice." *In re B.L. of Miami, Inc.*, 294 B.R. 325, 334 (Bankr. D.Nev. 2003).

Section 1412 of title 28 of the United States Code governs the transfer of venue in bankruptcy cases. It provides, in part, that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. §1412(1). Similarly, Rule 1014(1) of the Bankruptcy Rules provides, in part, that "[i]f a petition is filed in the proper district" – as it technically was in this case pursuant to 28 U.S.C. § 1408(2) – "the court, on the timely motion of a party in interest or on its own motion, . . . may transfer the case *to any other district* if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(1) (emphasis added). *See also In re B.L. of Miami, Inc.*, 294 B.R. at 328 (footnote omitted) (quoting 28 U.S.C. § 1412). "The decision of whether to transfer venue 'is within the court's discretion based on an individualized case-by-case analysis of convenience and fairness.'" *Id.* at 328-29 (quoting *In re Enron*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002)).

When analyzing whether to transfer a case for the convenience of the parties, bankruptcy courts use the six factors articulated by the Fifth Circuit in *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979) ("*CORCO*"):

(1) The proximity of creditors of every kind to the Court;
(2) The proximity of the bankrupt (debtor) to the Court;
(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;
(5) The economic administration of the estate;
(6) The necessity for ancillary administration if bankruptcy [liquidation] should result.

*CORCO*, 596 F.2d at 1247; *accord In re B.L. of Miami, Inc.*, 294 B.R. at 329. The *CORCO* factors all point toward Utah.

*In re B.L. of Miami, Inc.* is illustrative. In that case, a Nevada corporation whose primary asset was a nightclub in Florida, filed its petition in Reno, Nevada. *See id.* at 327-28. At that time, the debtor was embroiled in a hotly-contested Florida lawsuit regarding its lease which contained a Florida choice-of-law provision. *See id.* Applying the *CORCO* factors, this Court found that the majority of creditors were in Florida, the debtor's principal place of business was in Florida, the Florida state court case would be key to the effective and economic administration of the estate, and that assets of the debtor were all in Florida. Accordingly, it concluded that the case would be administered more economically in the District of Florida and justice would best be served by transferring the case there. *See id.* at 327-34.

The facts of this case weigh even more strongly in favor of transferring venue under the *CORCO* factors.

### 1. Proximity to Creditors.

Under the first *CORCO* factor, courts ask which venue is nearest to most of the creditors. "This factor must be analyzed as to both the number of creditors and the amounts of their claims." *Id.* at 330. "Both number and size are of equal significance in gaining acceptance of a plan and should be of equal significance in considering the convenience of the creditors." *CORCO*, 596 F.2d at 1248.

#### a. Secured claims.

The Debtor has purportedly encumbered its real estate with liens that relate to at least six secured loan transactions. With respect to those loans, six of the eight secured parties are either

- 8 -

Utah corporations or Utah limited liability companies. (SOF, ¶ 7.) Of the ten individuals who are secured lenders to WUCC, nine are residents of Utah. (*Id.*) None of the secured lenders is from Nevada.

          b.    <u>Unsecured priority claims.</u>

The Debtor has yet to file Schedule E with the Court. However, WUCC has stated that "[i]t is currently the third largest employer in the Milford, Utah area, employing approximately 60 people as of April 1, 2010." (SOF, ¶ 3.) Since the Debtor's mining operations and mining properties are located in Beaver County, Utah (SOF, ¶¶ 1 & 2), it is likely that most of the Debtor's priority unsecured claims will be held by creditor employees that reside in Utah and Utah's taxing authorities.

          c.    <u>Unsecured claims.</u>

Sixteen of the Debtor's 20 largest unsecured creditors are located in Utah, and they hold approximately $2.55 million of the $2.90 million held by such unsecured creditors. (SOF, ¶ 6.) None of the top twenty unsecured creditors is located in Nevada. *Compare In re B.L. of Miami, Inc.*, 294 B.R. at 330-31 ("in terms of numbers, 13 of the 20 creditors holding the largest unsecured claims are located in the Miami area. Their claims total $740,419.26, while the seven creditors outside Florida have claims totaling $106,059.19.").

In sum, the overwhelming majority of creditors of all kinds are located within the District of Utah. This factor weighs heavily in favor of transferring venue.

    **2.**    **Proximity to the Debtor.**

Under the second *CORCO* factor, courts ask which venue is nearest to the debtor. Here, there is no serious question that Utah is the preferable venue. The Debtor conducts its business operations in Utah. Its production workers are there. (SOF, ¶ 1 & 3.) Its knowledgeable operational personnel are there. (*Id.*) And its prepetition decision-makers are also there: David

McMullin, the Debtor's Chairman of the Board and Vice President, is in Utah. Fellow Board members Marcus Southworth and Eric Barlow are in Utah. Mark Dotson, the former President and CEO of WUCC, is in Utah. (SOF, ¶ 4.) "The concern is with the corporation's employees who must appear in court, not with the employees who are on the production line." *CORCO*, 596 F.2d at 1248. Certainly, the Debtor's "nerve center," and the personnel who man the Debtor's "nerve center," have always been in Utah. *See Hertz Corp. v. Friend*, 559 U.S. __, 130 S.Ct. 1181, 1192 (2010).

This factor also points clearly toward Utah.

### 3. Proximity to Witnesses Necessary to the Administration of the Estate.

Under the third *CORCO* factor, courts ask which venue is nearest to the likely witnesses. For example, *In re Dunmore Homes, Inc.*, 380 B.R. 663 (S.D.N.Y. 2008), the court transferred a case filed in New York to California after finding it significant that all of the debtor's employees and the majority of its shareholders lived in California. *Id.* at 676. The court noted that not only would it "be more convenient for [current and former employees] to appear in Sacramento" but also "compulsory process can . . . issue to require their appearance." *Id.*

Likewise, in *In re B.L. of Miami*, the court found that "[t]he administration of Debtor's estate hinges in large part on the pending litigation in the Florida state court," 294 B.R. at 331, and the lease at issue in Florida state court matter "contains a Florida choice-of-law provision[.]" *Id.* at 332. In that case, the third *CORCO* factor turned on where material witnesses would be available for the Florida state court case. *See id.*

Here, the Debtor's workers, managers and prepetition decision-makers are all in Utah. (SOF, ¶¶ 1-4.) And the successful administration of the Debtor's estate hinges in large part on the outcome of the Utah Lawsuit. Subpoenas issued by the District Court for the District of Utah would be enforceable against the vast majority of potential material witnesses, both in the Utah

Lawsuit and in the bankruptcy case itself (if it were in Utah). The Nevada Court would not have such power. Again, this factor weighs heavily in favor of transferring venue.

### 4. Proximity to the Assets.

Under the fourth *CORCO* factor, courts ask which venue is nearest to most of the debtor's assets. The Debtor's business – its copper mine and mill – are in Utah. (SOF, ¶ 1 & 2.) So venue is more proper there. *See In re B.L. of Miami*, 294 B.R. at 332 ("Debtor's principal asset is a nightclub, which is located [in] Florida . . . . Because the Debtor's sole major asset is in Florida, venue is more proper there." (Footnote omitted)).

As this court has previously observed, "[i]t makes good sense 'to locate the bankruptcy in a venue where the judge presiding would more likely have active familiarity with the community and the milieu' in which the [debtor's business] operates. Such a judge 'would be in a much better position to gauge the likelihood of an effective reorganization.'" *Id.* (quoting *In re Abacus Broad. Corp.*, 154 B.R. 682, 683 (Bankr. W.D.Tex. 1993)). "Where a debtor's assets consist solely of real property, as with the Debtor in this case, courts have held that transfer of venue is proper because matters concerning real property have always been of local concern and traditionally are decided at the situs of the property." *Id.* (alterations and internal quotation marks omitted).

Once again, this factor weighs heavily in favor of transferring venue.

### 5. Economic Administration of the Estate.

The fifth *CORCO* factor – where the administration of the estate will be most economic – "is the most important consideration[.]" *Id.; see also In re Enron*, 284 B.R. at 348. In *Dunmore Homes*, the court examined this factor in detail. *See id.* at 672-73. In choosing to transfer venue from New York to California, the court noted that "[a]nyone purchasing or financing the business in all likelihood is going to have to conduct most of the necessary due diligence in California"

PARSONS
BEHLE &
LATIMER

- 11 -

and that the "[d]ebtor's only offices, management and employees are located in California." *Id.* The court emphasized the economic benefit of having bankruptcy venue in the state where the debtor's real property was located, stating that "[t]he majority of the Debtor's significant assets consist of real property in residential developments in the state of California." *Id.* at 673.

Likewise, in the case of *In re Macatawa Hospitality, Inc.*, 158 B.R. 82 (E.D.Mich. 1993), the Eastern District of Michigan was asked whether venue should be transferred to the Western District of Michigan, where the debtor's "hotel, restaurant and adjoining facilities" were located. *See id.* at 84. In considering economic administration, the court gave great weight to the location of the primary real estate asset and transferred the case to the Western District of Michigan. *See id.* at 88. *Accord In re Enron*, 284 B.R. at 392.

Similarly, in *In re B.L. of Miami*, this Court determined that the economic administration factor favored transferring venue from Nevada to Florida where a pending case key to the administration of the estate involved property in Florida, many key witnesses lived in Florida, and the contract at issue contained a Florida choice-of-law provision. *See* 294 B.R. at 333.

All the considerations in the cases referred to above are salient here. The Debtor, its real estate assets, its prepetition decision-makers, and its creditors are in Utah. (SOF, ¶¶ 1 - 4, 6 - 8.) In addition, issues that are core to the Debtor's bankruptcy are already at issue in a proceeding that is pending in Utah and that will be decided under Utah law upon the testimony of mostly Utah witnesses. (SOF, ¶¶ 1 - 4, 8 - 11.) Clearly, the Debtor's bankruptcy can be administered far more economically in Utah than from afar in Nevada.

### 6. Necessity for Ancillary Administration Should Liquidation Result.

The sixth and final CORCO factor has "little weight because anticipating the failure of this Chapter 11 case is not a logical basis in weighing venue." *In re B.L. of Miami*, 294 B.R. 325, 333 (citing *CORCO*, 596 F.2d at 1248). But that view may not be entirely warranted. After all, it

- 12 -

should be a Utah court that ultimately decides *whether or not* conversion to chapter 7 is warranted in this case. Should this Debtor be liquidated, the ancillary administration would be in Utah because that is where all the Debtor's assets are. The Utah court is in the better position to decide if that result is inevitable or appropriate.

### C. THIS CASE SHOULD BE TRANSFERRED IN THE INTEREST OF JUSTICE.

"The interest of justice prong is a broad and flexible standard that is applied based on the facts and circumstances of each case." *In re Enron*, 284 B.R. at 403; *accord In re B.L. of Miami*, 294 B.R. at 334. Generally, "what serves the convenience of the parties will also serve the interest of justice[.]" *In re B.L. of Miami*, 294 B.R. at 334.

In this case, as in *B.L. of Miami*, "[r]etaining venue in Reno, Nevada, would make it difficult and expensive for interested parties to participate in the case. Creditors would be geographically distant and if they wanted to participate would need to retain local counsel. There is little doubt that distance and cost would unfairly reduce participation in the reorganization process and that participation is a fundamental predicate of Chapter 11." *In re B.L. of Miami*, 294 B.R. at 334 (citing 11 U.S.C. § 1109(b)). In this manner, justice can be frustrated when a case is tried in an inappropriate venue.

The Debtor's creditors are the beneficiaries of its estate. Those creditors are in Utah. They should not have to shoulder the expense and inconvenience of hiring Nevada counsel and flying to Reno to attend hearings and participate in this case. Moreover, the economic interests of these creditors should not be taxed by the estate bearing the unnecessary expense of flying the Debtor's principals and witnesses back and forth from Utah to Nevada for every hearing.

### CONCLUSION

This case simply does not belong in Nevada. The Debtor has only the thinnest connection to Nevada. The Debtor, its real estate assets, its employees, its managers, its prepetition decision-

PARSONS
BEHLE &
LATIMER

makers and virtually all its secured and unsecured creditors are in Utah. The success of its reorganization hinges on the disposition of the disputes at issue in a lawsuit that is pending in Utah and that will be decided under Utah law upon the testimony of mostly Utah witnesses. This case can be administered much more economically in Utah.

This case simply does not belong in Nevada. In the interest of justice and the convenience of parties, this case should be transferred to Utah.

* * *

Respectfully submitted this 1st day of June, 2010.

PARSONS BEHLE & LATIMER

By: _____
Rew R. Goodenow
J. Thomas Beckett ✓
Scott S. Bell
Attorneys for Nevada Star Resource Corp.

## JOINDER OF CREDITORS

**[Begins on Following Page]**

## JOINDER

The undersigned creditor of Western Utah Copper Company ("WUCC") hereby joins in the above motion of Nevada Star Resource Corp. and its request that WUCC's case be transferred to the United States Bankruptcy Court for the District of Utah:

Name / Address of Creditor: Bridge Loan Capital Fund L.P.
1240 E. 2100 S. Suite 100
Salt Lake City, Utah 84106

Type of Claim:   ☒ Secured
                 ☐ Unsecured
                 ☐ Other (e.g. wages) _____

Approx. Amount of Claim: $ 8,686,512 00/100     TOTAL / $5,727,234 00
                                                      + 2,959,278

Name / Position of Person Signing: John Pennington

Signature: John S. Pennington Jr.     Date: June 1/2010

# JOINDER

The undersigned creditor of Western Utah Copper Company ("WUCC") hereby joins in the above motion of Nevada Star Resource Corp. and its request that WUCC's case be transferred to the United States Bankruptcy Court for the District of Utah:

Name / Address of Creditor: M. E. Dancy Consulting Services, Inc
455 E. 500 S. #205
Salt Lake City, UT 84111

Type of Claim:
☒ Secured
☐ Unsecured
☐ Other (e.g. wages) _____

Approx. Amount of Claim: $ 450,000

Name / Position of Person Signing: Michael Dancy, President

Signature: /s/ Michael Dancy    Date: June 1, 2010

## JOINDER

The undersigned creditor of Western Utah Copper Company ("WUCC") hereby joins in the above motion of Nevada Star Resource Corp. and its request that WUCC's case be transferred to the United States Bankruptcy Court for the District of Utah:

Name / Address of Creditor: Republic Bank, Inc.

1560 South Renaissance Towne Dr. Suite 260

Bountiful, UTAH 84010

Type of Claim:  ☒ Secured

☐ Unsecured

☐ Other (e.g. wages) _____

Approx. Amount of Claim: $ 1,300,000.00

Name / Position of Person Signing: Mark J. Carpenter

Signature: /s/ Mark J. Carpenter    Date: 6/1/2010

PARSONS
BEHLE &
LATIMER

- 15 -

# JOINDER

The undersigned creditor of Western Utah Copper Company ("WUCC") hereby joins in the above motion of Nevada Star Resource Corp. and its request that WUCC's case be transferred to the United States Bankruptcy Court for the District of Utah:

Name / Address of Creditor: _____

_____

_____

Type of Claim:       ☐ Secured

☐ Unsecured

☐ Other (e.g. wages) _____

Approx. Amount of Claim:   $ _____

Name / Position of Person Signing: _____

Signature: _____      Date: _____