E-filed: June 4, 2010

Robert R. Kinas (Nevada Bar No. 6019)
Mark E. Konrad (Nevada Bar No. 4462)
Nishat Baig (Nevada Bar No. 11047)
SNELL & WILMER L.L.P.
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
Email: rkinas@swlaw.com
        mkonrad@swlaw.com
        nbaig@swlaw.com
*Attorneys for DDB Utah, LLC; The*
*Raymond W. Schmelzer Marital Trust; Top-*
*Notch Investments, LLC; Rodney Evan*
*Schmelzer; Brent Thomas Bingham; Bridge*
*Loan Capital Fund, LP; Devin Durrant DPI*
*College, LC; Milford Copper Investors II,*
*LLC; Reynolds Brothers, Inc.; and Milford*
*Investors, LLC*

George Hofmann, Esq. *(pending pro hac vice)*
PARSONS KINGHORN HARRIS, P.C.
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378
Email: gbh@pkhlawyers.com

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 10-51913-gwz |
| | Chapter 11 |
| WESTERN UTAH COPPER COMPANY, a Utah corporation, | |
| Debtor. | **FIRST PRIORITY SECURED LENDERS' OPPOSITION TO MOTION FOR ORDER SHORTENING NOTICE PERIOD FOR HEARING ON DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364 AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** |

Secured lenders DDB Utah, LC, Top-Notch Investments, LLC, Raymond W. Schmelzer Marital Trust, Rodney Evan Schmelzer, Brent Thomas Bingham, Bridge Loan Capital Fund, LP, DPI College, LC, Milford Copper Investors II, LLC, Reynolds Brothers, Inc., and Milford Investors, LLC (collectively, the "**Secured Lenders**"), through their undersigned counsel, submit this Opposition to the Motion of Western Utah Copper Company (the "**Debtor**") for Order Shortening Notice Period for Hearing on Debtor's Motion for Entry of an Order Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364 and Rule 4001 of the

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

Federal Rules of Bankruptcy Procedure [Docket No. 29] (the "**Motion**"), and state as follows:

1.     The Secured Lenders are identified in the Debtor's Schedule D [Docket No. 24, page 51] as being the "First Lien Lender Group," and the amount of their claim is listed as $30,433,333. The actual amount of the Secured Lenders claim is in excess of this amount. The value of the Secured Lenders' collateral, described as "real property/mineral rights" is listed as "unknown." Although the Debtor's schedules are not entirely clear as to the value of the underlying real property and mineral rights, it appears that the Debtor believes the value of these assets to be approximately $1.7 million [Docket No. 24, pages 1, 3, and 8].

2.     The Debtor proposes, on an emergency basis with less than a week's notice to the Secured Lenders, to "prime" the Secured Lenders' first-priority position with a $1 million debtor in possession senior secured financing (the "**Proposed Priming Financing**"). If the Debtor's schedules are accurate, the Secured Lenders are extremely undersecured, and their position would be downgraded even further if the Secured Lenders' position were subordinated to the Proposed Priming Financing.

3.     This is not an ordinary Chapter 11 case where a debtor is operating a business of some type, and without an immediate infusion of capital, it cannot pay employees, rent, utilities, and the other normal costs of operating a business. In that case, frequently emergency DIP financing is essential to prevent immediate and irreparable harm to the estate, through the loss of going concern value.

4.     This Debtor has no going concern value because it is not a going concern. It is an assemblage of assets with no present ongoing operations of significance and no cash. According to the Debtor's Schedule B, it has unrestricted available cash of $133.08. [Docket No. 24, page 4]. According to the Debtor's Schedule E, it owes approximately 50 employees aggregate wage claims of approximately $181,000. [Docket No. 24, pages 54-63].

5.     This Debtor is not requesting emergency approval of the Proposed Priming Financing in order to maintain the status quo—the Debtor actually wants to change the status quo. As acknowledged through the Marcus Southworth Declaration [Docket No. 34, paragraph 12]: "Without funding, the Debtors' operations are at a standstill. I am confident that, with funding to

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

11593429.1

1   commence operations again, the Debtors will be able to continue drilling and operations . . ." and

2   the Debtor admitted in the Motion itself that the purpose of the Proposed Priming Financing is "to

3   enable the Debtors to <u>commence</u> operations of their business during the pendency of these cases."

4   [Docket No. 29 at page 2, emphasis supplied].

5         6.    The Debtor's current non-operating status did not begin yesterday.  The Debtor

6   filed its voluntary Chapter 11 petition on May 18, 2010, and with cash on hand of $133.08, it is

7   reasonable to believe that it has not operated at any significant level since May 18—two and a

8   half weeks ago.  According to a press release (copy attached as Exhibit A) issued by the Debtor's

9   publically traded parent company—Copper King Mining Company, "[t]he Company has

10  temporarily suspended copper mining and Mill processing operations. . .  The Company hopes to

11  restore full operations as soon as possible."  That press release was issued a month ago, on May 3,

12  2010.  The Secured Lenders have reason to believe that the Debtor ceased significant operations

13  even several months before the issuance of that press release.

14        7.    In short, there is no emergency here.  The Debtor is not trying to preserve an

15  operating entity and the status quo until a final hearing can be had upon reasonable notice.  The

16  Debtor instead wishes to <u>begin</u> operations at a presently dormant operation.

17        8.    Based on the Debtor's supposed emergency, it asks this Court to authorize $1

18  million in immediate Proposed Priming Financing.  But why does the Debtor need $1 million?

19  The answer to that question cannot be found in any of the pleadings submitted by the Debtor.

20  The only specific dollar figure attached to a proposed "emergency" expenditure is $18,000 for a

21  reclamation bond.  The Debtor identifies exactly three other "emergency" expenditures (utilities,

22  security, and insurance), but has not informed the Court or parties of the costs of these items.  The

23  Secured Lenders have reason to believe that even if all of the Debtor's "emergency" expenditures

24  were made, the reasonable cost of these items is far less than $1 million.

25        9.    The Debtor has not through its pleadings, and cannot through evidence, prove that

26  there is a real emergency.  There is no reason that a hearing must be had on less than one week's

27  notice, especially where this case has been pending for more than two weeks, and the Debtor's

28  operations have been dormant for more than a month, without any apparent ill effects.  The

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

11593429.1

1    Debtor has not identified how the situation today is any different than it was the day the Debtor

2    commenced this case.

3        10.    The underlying motion to approve the Proposed Priming Financing is extremely

4    complicated, and will take a significant amount of time to enable the Secured Lenders to

5    adequately consider and respond to the allegations. The Debtor has submitted declarations from

6    experts, including a mining engineering professor, a professional licensed geologist, and a

7    consulting geologist. The Secured Lenders will require a reasonable time to assess these expert

8    opinions, and to counter them if necessary with their own experts. Discovery will be required,

9    including depositions of those who have submitted declarations in support of the underlying

10   motion.

11       11.    Before the Debtor filed the Motion, Nevada Star Resource Corp. ("**Nevada Star**")

12   filed a motion to change venue of this Chapter 11 case to the District of Utah [Docket No. 19].

13   Indeed, this motion to change venue was the first substantive motion to be filed in this case. The

14   Secured Lenders agree that the venue of this case belongs in Utah. The Debtor owns a copper

15   mine located in Utah. The vast majority of the Debtor's creditors are based in Utah, its only

16   operations are in Utah, and its employees are in Utah. The primary counsel for the Secured

17   Lenders are located in Utah, as is Nevada Star's counsel, and Cardwell Distributing's counsel

18   [Docket No. 26]—all of the creditor's counsel that have appeared in this case to date. The

19   Secured Lenders submit that the venue issue should be settled first, before this case moves too far

20   down the tracks. The Secured Lenders request the Court to resolve the venue question before

21   making the interim decision concerning the Proposed Priming Financing.

22       12.    The primary counsel to the Secured Lenders is George Hofmann, and he has two

23   substantial hearings in the United States Bankruptcy Court for the District of Utah on June 10,

24   2010. It would be extraordinarily difficult, if not impossible, for Mr. Hofmann to represent his

25   clients in his other two June 10 hearings, and also an emergency hearing in this case on June 10.

26   The Secured Lenders respectfully request the Court not schedule a hearing in this case on June 10

27   in order for the Secured Lenders to be represented with the counsel of their choice at the hearing

28   on the motion.

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

13. This Court's interim decision on the Proposed Priming Financing may well be the most important decision in this case. It is a $1 million dollar decision that, based on the information provided by the Debtor in its Schedules, will reduce the collateral available to the Secured Lenders from $1.7 million to $700,000. The Debtor has not shown that a real emergency exists, and there is a substantial question as to the appropriate venue of this case. Accordingly, the Secured Lenders respectfully request the Court to deny the Motion.

DATED this 4th day of June, 2010.

SNELL & WILMER L.L.P.

By: /s/ Robert R. Kinas
    Robert R. Kinas (Nevada Bar No. 6019)
    Mark E. Konrad (Nevada Bar No. 4462)
    Nishat Baig (Nevada Bar No. 11047)
    3883 Howard Hughes Parkway, Suite 1100
    Las Vegas, NV  89169

and

PARSONS KINGHORN HARRIS, P.C.

By: /s/ George Hofmann *(pending pro hac vice)*
    111 East Broadway, 11th Floor
    Salt Lake City, Utah 84111
    Telephone:  (801) 363-4300
    Facsimile:  (801) 363-4378

*Attorneys for DDB Utah, LLC; The Raymond W. Schmelzer Marital Trust; Top-Notch Investments, LLC; Rodney Evan Schmelzer; Brent Thomas Bingham; Bridge Loan Capital Fund, LP; Devin Durrant DPI College, LC; Milford Copper Investors II, LLC, Reynolds Brothers, Inc.; and Milford Investors, LLC*

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

11593429.1